\* E-filed 1/14/09\*

NOT FOR CITATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEW AMSTERDAM PROJECT MANAGEMENT HUMANITARIAN FOUNDATION, a Dutch non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>KELLY M. LAUGHRIN, CAMPBELL, WARBURTON, FITZSIMMONS, SMITH, MENDELL & PASTORE, a California Corporation,<br><br>Defendants.<br>_____/ | No.07-00935-JF (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY**<br><br>**[Re Docket Nos. 29, 30, 31, 32, 33]** |

**FACTUAL BACKGROUND**[1]

In 2001, plaintiff New Amsterdam Project Management Humanitarian Foundation ("NAF") invested $10 million dollars with Margaret Laughrin, Clinton Holland (her business partner), Hartford Holding Corporation (controlled by Laughrin and Holland), Riki Graham Mangere, and Euro Capital Markets Limited (Mangere's business). Pursuant to an agreement made with Mangere, NAF wired the money to a US Bank account held by Hartford Holding Company. (Pl's Factual Submission, Exhibit 5.) The money was supposed to be used to

---

[1] The "facts" set out in this order are a combination of plaintiff's and defendants' allegations. Where a party gave some support for an allegation, the court has attempted to note the evidence as presented. This court is not making findings of fact.

1  purchase Treasury Bills, but it was not. Instead, some $800,000 of the money appears to have
2  been transferred to bank accounts held by C.T. Ventures (another entity Laughrin owned with
3  Holland), Meyer and Connolly (a law firm representing Laughrin), and various others. (*Id*. at
4  Exhibit 6.) Later in the month, $1.5 million dollars was wired to A. Zeegars. (*Id*. at Exhibit 8.)
5  US Bank began questioning the legitimacy of the account once Hartford Holding Corporation
6  attempted to wire around $1 billion dollars into it. (*See Id.* at Exhibits 9-16.) Unsure that the
7  funds were "clean,"US Bank refused the transfer and closed the account. (*Id*. at Exhibit 17.)
8  Before the account was closed, $200,00 was wired from it to Kelly Laughrin, Margaret's
9  daughter, $100,000 was wired to Robert MacKay, and the remaining balance was transferred to
10 C.T. Ventures. (*Id*. at Exhibit 18.)

Around the same time that Kelly Laughrin received the $200,000, Margaret retained defendant law firm Campbell, Warburton, Fitzsimmons, Smith, Mendell & Pastore ("Campbell Warburton"), where Kelly was an attorney, to provide legal services to herself, Clinton Holland, Hartford Holding Company and C.T. Ventures. Campbell Warburton received $67,000 from Margaret, apparently as a retainer for estate planning and business consulting services (although the defendants represented at the hearing that no retainer agreement or document confirming its retention, describing the contemplated services, or detailing the billing arrangement was prepared).

Although it appears that the theft itself took place in the summer of 2001 (immediately after NAF's money was transferred to the US Bank account), NAF did not learn that its money was missing for years, partly because attorneys at Meyer and Connolly helped to cover up the theft. In 2003, NAF filed suit against Margaret Laughrin, Clinton Holland, Rick Mangere, their various entities, and the attorneys that had helped them. NAF obtained a default judgment against Laughrin, Holland, Hartford Holding Corporation, Riki Graham Mangere, and Euro Capital Markets Limited. At some point, NAF learned about the $200,000 transfer to Kelly, and the money Campbell Warburton had received. NAF filed the instant case in 2007, seeking to recover the $267,000 under theories of conversion, unjust enrichment, and common count.

2

**PROCEDURAL HISTORY**

The parties were referred to an early settlement conference by the presiding judge, but NAF claimed that discussions would be fruitless until discovery was obtained. NAF requested said discovery, and defendants responded with objections based on various privileges and attorney work-product protection, accompanied by a rather sketchy privilege log. NAF then filed five motions, seeking to compel: (1) additional document production from Kelly Laughrin; (2) additional responses to requests for admission from Kelly Laughrin; (3) additional responses to special interrogatories from Kelly Laughrin; (4) additional responses to special interrogatories from Campbell Warburton; and (5) additional document production from Campbell Warburton. This order addresses all five motions.

This court held a hearing on July 1, 2008. Following the hearing, the court's first interim order required defendants to produce new privilege logs. The court also requested supplemental briefing on two points of law that has been argued at the hearing, but not clearly briefed. In addition, the court invited NAF's counsel to identify those documents that supported its assertion that Margaret had retained Campbell Warburton to aid her in committing fraud. Finally, the court overruled all defendants' objections based on third party privacy rights.

The revised privilege log was submitted in August, as was the supplemental briefing. In its second interim order, the court granted NAF's request for permission to object to the revisions, and allowed defendants to respond. In their response, defendants withdrew their objections to many of the documents originally withheld, and produced them.

In its third interim order, the court considered NAF's argument that the attorney-client privilege was trumped by the crime-fraud exception. There was not yet enough evidence in the record to support such a finding. There was, however, enough evidence to trigger an *in camera* review. To that end, defendants were ordered to produce "all documents defendants have withheld on the basis of privilege created between July and August of 2001, and documents from any other time period that either (1) explain or reference the purpose of Campbell Warburton Warburton's representation of Margaret Laughrin, Clinton Holland, Hartford Holding Company or C.T. Ventures; or (2) indicate that Margaret Laughrin acquired money

through either theft or fraud."

NAF asked to submit additional documents that had been produced in the time since it had filed its crime-fraud briefing. In its fourth interim order, the court granted plaintiff's request. Not content to merely submit the documents, NAF filed seven additional pages of argument. Defendants objected, and asked to respond. In its fifth interim order, the court permitted defendants to respond to plaintiff's unasked-for argument.

Having considered the voluminous moving papers,[2] the arguments presented at the hearing, and the numerous supplemental filings, the court now GRANTS IN PART and DENIES IN PART plaintiff's motions.

## DISCUSSION

**A. Defendants' Attorney-Client Privilege and Work Product Objections**

As previously noted, the defendants objected overwhelmingly to plaintiff's discovery requests with claims of privilege and attorney work-product protection**.** The court having overruled defendants' "third party privacy" objections, defendants only asserted attorney-client privilege and work product objections in the revised privilege log. The court addresses these objections as an initial matter, then applies these rulings to the remaining issues.

**1. The Crime-Fraud Exception**.

Both in its papers and at the hearing, counsel for NAF implored the court to apply the crime-fraud exception to extinguish the attorney-client privileges held by Margaret Laughrin and Hartford Holding Corporation. The attorney-client privilege is one of the "most fundamental" privileges recognized under the Federal Rules of Evidence. *Nowell v. Superior*

---

[2] Plaintiff filed three documents asserting evidentiary objections. The first was titled "Objections to Declaration of Kelly M. Laughrin and Nicholas Pastore In Support of Defendants' Opposition to Plaintiff's Motion to Compel." (Docket No. 50). The court OVERRULES objections 1, 3, and 5, and SUSTAINS objections 2, 4, and 6. The second was titled "Objections to the Declaration of Kelly M. Laughrin." (Docket No. 65). The court OVERRULES all of these objections. Kelly Laughrin was ordered to submit this second declaration to aid the court in determining who the various people listed in the privilege log were. The declaration sets forth Laughrin's subjective understanding to the best of her knowledge. That is what the order required. Finally, NAF made numerous objections to the revised privilege log defendants submitted. Rather than address these objections individually, the court will address them in the context of plaintiff's motions to compel documents, below.

4

*Court*, 223 Cal.App.2d 652, 657, (Cal. Superior Ct., 1964); *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1090 (9th Cir. 2007). It is not, however, absolute.

The party seeking to vitiate a claim of attorney-client privilege with the crime-fraud exception must show: (1) that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme; *Id.* (citing *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1997) (internal quotations omitted); and (2) that the communication "reasonably relates" to the crime or fraud. *BP Alaska Exploration, Inc. v. Nahama & Weagant Energy Company,* 199 Cal.App.3d 1240, 1268 (1988). "The attorney does not have to be aware of the fraud for the crime-fraud exception to apply." *State Farm Fire & Casualty Co. v. Superior Court* 54 Cal. App. 4th 625, 645 (1997). If the exception applies, the client's communications with the attorney are no longer protected. The plaintiff must still prove any case it has (on whatever theories it has alleged) against the attorney.

Initially, at the hearing and in its papers, NAF urged the court to extinguish the attorney-client privilege on a theory of collateral estoppel. NAF asserted that the default judgment it received from the Central District of California established that Margaret Laughrin, Clinton Holland and Hartford Holding Corporation were engaged in illegal acts during July 2001, and that defendants could not assert any attorney-client privileges on these clients' behalf. The court was not persuaded because, while the ruling established that these client's were engaged in illegal acts, the ruling did not address how the communications at issue in this case were reasonably related to the illegality. The Central District ruling was made specifically in relation to Laughrin's communications with Meyer and Connolly (the law firm that assisted Laughrin, Holland and Mangere in covering up the theft). The communications plaintiff seeks in these motions were between Margaret Laughrin, Clinton Holland, Hartford Holding Corporation, and C.T. Ventures and the attorneys at Campbell Warburton.

The court is aware that the party challenging the privilege often lacks sufficient evidence to establish the exception because this evidence is likely to be in the hands of whoever is invoking the privilege. Where a plaintiff has made some showing of the client's criminal or fraudulent scheme, and its possible relation to the privileged communications sought, courts

5

have engaged in *in camera* review of the privileged materials. This is precisely what occurred here.

Plaintiff has provided sufficient evidence to meet its burden to establish that Campbell Warburton clients Margaret Laughrin, Clinton Holland and Hartford Holding Corporation were likely engaged in illegal activity in July of 2001, around the time that they sought Campbell Warburton's legal services. Having reviewed the documents defendants submitted, the court also finds that some of the attorney-client communications NAF seeks are sufficiently related to the illegal activity to trump the attorney-client privilege. For example, it appears that Laughrin and Holland may have planned to use, or used, estate-planning devices to conceal monies that originated from NAF. The attorney-client privilege held by Margaret Laughrin, Clinton Holland, Hartford Holding Corporation and C.T. Ventures will be extinguished in each communication that is reasonably related to transfers of monies from accounts that may have housed NAF's money. The *in camera* review also revealed consultations with Campbell Warburton attorneys on matters that were not sufficiently related to such transfers. Since the crime-fraud exception is triggered by the nexus between the illegality and the particular privileged communication, some communications retain their attorney-client privilege.

The court emphasizes that it only finds that plaintiff has established to a preponderant likelihood that Campbell Warburton's clients were engaged in criminal or fraudulent acts, and that these acts were reasonably related to some of the privileged communications defendants are currently withholding. This ruling does not address whether defendants had knowledge of their clients' wrongful activities. Additional responses and production of individual documents will be addressed in the context of plaintiff's motions to compel, below.

**2. Work-Product Protection.**

Defendants objected to producing a large number of documents and to answering interrogatories on work-product grounds. An objection based on work-product protects trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews. Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor,* 329 U.S. 495, 511 (1947). "To be protected, the communication must have

1 been prepared in anticipation of litigation. Although commencement of a lawsuit is not
2 required, there must be some *possibility* of litigation." SCHWARZER, WALLACE, AND TASHIMA,
3 FEDERAL CIVIL PROCEDURE BEFORE TRIAL, 11-102 (hereinafter, "Schwarzer").
4      Nobody argues that Margaret Laughrin, Clinton Holland, Hartford Holding Corporation
5 or C.T. Ventures originally retained Campbell Warburton and its attorneys in anticipation of
6 litigation. Campbell Warburton says that the original purpose of the representation was to assist
7 Margaret Laughrin and Clinton Holland in estate planning, and to provide advice about the
8 corporations. After NAF filed its 2003 lawsuit, Campbell Warburton attorneys drafted proposed
9 settlement agreements, and seem to have advised Margaret Laughrin about the litigation,
10 although they never made an appearance on her behalf. Therefore, some of the communications
11 currently withheld can qualify for work-product protection, however, many of them cannot.
12 Only those documents that were prepared in relation to the 2003 lawsuit can be rightly
13 classified as work-product. The court OVERRULES the objection as to all other
14 communications. As with the ruling on defendants' attorney-client privilege objections, the
15 production of individual responses and documents will be addressed in the context of plaintiff's
16 motions to compel.

17      **B. NAF's Motions to Compel Further Responses from Kelly Laughrin.**
18      NAF sought to compel additional responses to its First Set of Requests for Admission
19 ("RFAs") from Kelly Laughrin in "Discovery Motion 2." NAF specifically takes issue with the
20 answers Kelly gave to RFAs 2-4 and 9-11. When responding to RFAs, a party must admit,
21 deny, or state that she has made a reasonable inquiry and cannot admit or deny. *See* Fed. R. Civ.
22 P. 36(a). Kelly unambiguously denies RFAs 4, 9 and 10, and admits RFA 11. The motion, as to
23 those four RFAs, is DENIED as MOOT.
24      RFA 2 states "[t]he money transferred into the . . . bank account of Kelly Laughrin on or
25 about August 1, 2001, originated from [NAF]" RFA 3 states that "Margaret Laughrin caused
26 [NAF's money] to be wire transferred to Kelly Laughrin." In response to both, Kelly stated that
27 after reasonable inquiry, she could neither admit or deny either RFA. NAF claims that she may
28 not give lack of information or knowledge as a reason for failing to admit or deny unless she

7

also makes a reasonable inquiry. NAF contends that Kelly has documents in her possession that show the money belonged to it, and that Kelly also must ask her mother to tell her whom the money she received belonged to. According to NAF, failure to do so is a failure to make a reasonable inquiry.

The documents that NAF contends show that this was its money are inconclusive. The wire transfer documents in Exhibit 54 show that its money went into a US Bank Account, and that Kelly received $200,000 from that same account. It is not clear, however, that only NAF's money, or that only stolen money, went into that account. NAF's counsel appears to have leapt to this conclusion. While Kelly has an obligation to review whatever documents she has before responding, she is not obliged to make the leap that NAF's counsel has made, or use that conclusion to answer. She also has no obligation to accept a third party's testimony as her own (as NAF suggested, Margaret's answers). *See* Schwarzer at 11-285. Requests for Admission ask for personal knowledge. Kelly has plainly stated she has no personal knowledge of the ownership of the $200,000. The motion, as to RFAs 2 and 3, is DENIED.

NAF sought to compel Kelly Laughrin to provide additional responses to its interrogatories in "Discovery Motion 3." NAF specifically complains about Kelly's answers to interrogatories 1-4, 6 and 9. Interrogatory 1 asked Kelly what she did with the $200,000. She responded that she put $80,000 toward her house, paid off some credit cards, applied $103,000 toward law school loans, and spent the rest on miscellaneous things. NAF wants more information. Kelly claims she does not remember and has no obligation to find out. The court disagrees. She certainly has the obligation to search all available records and consult sources of information to provide whatever level of detail she can, i.e., the names of the credit card(s), account numbers, the lender of the school loan, the loan number, etc. NAF's motion to compel additional response to Interrogatory 1 is, therefore, GRANTED.

Interrogatory 2 asked for Margaret Laughrin's addresses since January 2001. Kelly objected on the grounds of Margaret's privacy rights, and attorney-client privilege. In its interim order, this court overruled all objections based on third party privacy rights. This leaves only the objection based on attorney client privilege. Generally, the identity of an attorney's

1 client is not privileged unless "disclosure would convey the substance of a confidential
2 professional communication between the attorney and the client." *In re Grand Jury Subpoenas,*
3 803 F.2d 493, 496-98 (9th Cir. 1986). The motion to compel further response to Interrogatory 2
4 is GRANTED.

5 NAF's motion to compel additional responses to interrogatories 3, 4, and 6-9 is
6 DENIED. Many of these interrogatories contain discrete sub-parts in violation of Rule 33(a)(1).
7 (For example, interrogatory 3 asks for the facts upon which each of the seventeen affirmative
8 defenses were based; interrogatory 6 asks for the facts upon which each response to the RFAs
9 were based.) Although she objected to the interrogatories for these subparts, Kelly answered
10 them, and provided supplemental responses in some cases. Her responses were adequate.

**C. NAF's Motion to Compel Further Responses from Campbell Warburton.**

12 NAF sought to compel further responses to interrogatories from defendant Campbell
13 Warburton in "Discovery Motion 4." NAF takes specific issue with Campbell Warburton's
14 answers to interrogatories 1, 2, 4, and 8-12. Interrogatory 1 asks Campbell Warburton to "state
15 all facts" that it based each of its affirmative defenses on. This interrogatory contains subparts,
16 in excess of the 25-interrogatory limit. Moreover, although Campbell Warburton objected to the
17 interrogatory for this reason, it also responded adequately, and provided a supplemental
18 response. Similarly, Interrogatories 2, 4, 11, and 12 have been adequately answered. No further
19 response is required. NAF's motion, as to interrogatories 1, 2, 4, 11 and 12 is DENIED.

20 Interrogatory 10 asked defendant to "describe in detail each meeting [it] ever had with
21 Margaret Laughrin." Campbell Warburton objected on the grounds of privacy rights, attorney-
22 client privilege and the work product doctrine. The court previously overruled the privacy rights
23 objection. Plaintiff's motion to compel further response to Interrogatory 10 is GRANTED IN
24 PART. Defendant must disclose the dates and times of all meetings with Margaret Laughrin. As
25 for the "details" of the discussion, the crime-fraud exception extinguishes any privilege in the
26 details defendant has about meetings where estate planning or transfers of monies were
27 discussed, and no work-product protection applies. Defendant may withhold (on attorney-client
28 privilege or work-product protection grounds) protected details from meetings where litigation

9

or settlement matters were discussed..

Interrogatory 8 requested that Campbell Warburton "identify each communication between [it] and Margaret Laughrin whereby Margaret Laughrin offered or was asked to contribute to or pay for the defense of the within action." Campbell Warburton objected on the grounds of attorney-client privilege and work-product protection. The court overrules Campbell Warburton's objections, and GRANTS the motion as to Interrogatory 8.

Similarly, Interrogatory 9 asked Campbell Warburton to "identify each communication between [it] and Margaret Laughrin whereby Margaret Laughrin offered or was asked to contribute to or pay for a settlement of the within action." Campbell Warburton objected on the grounds of attorney-client privilege and work product protection, in addition to third party privacy rights. The court already overruled the privacy objection, and now overrules the attorney-client privilege and work product objections. Plaintiff's motion, as to Interrogatory 8, is GRANTED.

**D. Plaintiff's Motions to Compel Production of Documents.**

NAF sought to compel additional production of documents from Kelly Laughrin in "Discovery Motion 1," and from Campbell Warburton in "Discovery Motion 5." The motions were nearly identical. As originally briefed, the motions presented some 73 requests for production.

In response to the court's third interim order, Defendants submitted for *in camera* review both (1) the documents that were responsive to the order, and (2) all remaining documents that they had withheld. In determining the applicability of the crime-fraud exception, the court also performed a *de facto in camera* review of all remaining withheld documents. Therefore, IT IS ORDERED that the defendants produce documents that: (1) do not contain any privileged or work-product protected communications; and (2) do not contain any work-product, where the attorney-client privilege has been nullified by the crime-fraud exception.

Much to the court's surprise, and despite defendants' counsel's representations to the contrary, the *in camera* review revealed that defendants continued to withhold a number of fax cover sheets, phone message slips, and other documents that did not contain any information

that was ever protected by attorney-client privilege or work-product exemption. Defendants' *in camera* materials also included nearly 30 pages of billing records. The amount of fees paid to an attorney are not privileged, so billing records are generally discoverable. *Real v. Continental Group, Inc.*, 116 F.R.D 211, 213-14 (N.D. Cal. 1986). These documents should have been produced, and are ordered to be produced in the first section below.

Some of the documents defendants withheld were not attorney work-product, but would have been protected by the attorney-client privilege. Because the court found that these documents were reasonably related to transfers of monies or estate planning, the privilege these documents would have otherwise retained has been extinguished. These documents are ordered to be produced in the second section below.

**1. Documents that do not contain any privileged or work-product protected communications, specifically:**

| | |
|---|---|
| CAM00001-2 | CAM00321 |
| CAM00008 | CAM00324-25 |
| CAM00029 | CAM00328 |
| CAM00061-63 | CAM00361 |
| CAM00065 | CAM00410 |
| CAM00070 | CAM00610 |
| CAM00142 | CAM00683 |
| CAM00148 | CAM00723-26 |
| CAM00208 | CAM00989-992 |
| CAM00216 | CAM01006 |
| CAM00288 | CAM01009-10 |
| CAM00296-97 | CAM01021 |
| CAM00299 | CAM01070 |
| CAM00311 | CAM01086 |
| CAM00313-315 | CAM01093 |
| CAM00317-18 | CAM01097 |

| | |
|---|---|
| CAM01111-12 | CAM01155 |
| CAM01127 | CAM02000-2027 |
| CAM01135 | |
| CAM01146-47 | |

**2. Documents that do not contain any work-product, and where the attorney-client privilege has been nullified by the crime-fraud exception, specifically:**

| | |
|---|---|
| CAM00005 | CAM00130 |
| CAM00009-12 | CAM00136 |
| CAM00014 | CAM00146 |
| CAM00019-20 | CAM00612-682 |
| CAM00022 | CAM00684-722 |
| CAM00026-28 | CAM00737-775 |
| CAM00030-32 | CAM00976-988 |
| CAM00034-37 | CAM00993-1008 |
| CAM00040-42 | CAM01011-1063 |
| CAM00044-55 | CAM01068 |
| CAM00057-60 | |
| CAM00067-69 | |

All discovery responses and productions are due **not later than January 30, 2009.**

**IT IS SO ORDERED.**

Dated: 1/13/09

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

1  THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

2  Heather Noelte   hnoelte@dempseyjohnson.com

3  John Mark Thacker   jthacker@ropers.com

5  * Counsel are responsible for providing copies of this order to co-counsel.

13