**E-Filed 5/29/09**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| NEW AMSTERDAM PROJECT MANAGEMENT HUMANITARIAN FOUNDATION, a Dutch non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>KELLY M. LAUGHRIN; and CAMPBELL, WARBURTON, FITZSIMMONS, SMITH, MENDELL & PASTORE, a California corporation,<br><br>Defendants. | Case Number C 07-935 JF (HRL)<br><br>**ORDER[1] DENYING MOTION FOR CONTINUANCE AND GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: doc. nos. 94 & 111 |

Plaintiff New Amsterdam Project Management Humanitarian Foundation ("Plaintiff") alleges that attorney Kelley Laughrin ("K.L.") and her law firm Campbell, Warburton, Fitzsimmons, Smith, Mendell & Pastore ("Campbell Warburton") (collectively, "Defendants") participated in a scheme orchestrated by her mother Margaret Laughrin ("M.L.") and her mother's business associates Clinton Holland ("Holland") and Riki Graham Mangere ("Mangere") to defraud Plaintiff of $10,000,000 in investment funds. Plaintiff brings claims for

---

[1] This disposition is not designated for publication in the official reports.

conversion, common count, and restitution. Defendants move for summary judgment on the grounds that Plaintiff's claims are barred by the applicable three-year statute of limitations, and that Plaintiff cannot trace and identify a specific sum of converted money held by Defendants, as required to sustain each of Plaintiff's claims. Plaintiff requests a continuance in order to take additional discovery that it claims will provide a foundation for documents to which Defendants have objected. As explained below, the Court concludes that even if all of Plaintiff's evidence is presumed admissible and is viewed in the light most favorable to Plaintiff, there is no genuine dispute as to any material fact that could render Plaintiff's claims timely. Accordingly, Defendants' motion for summary judgment will be granted.

## I. FACTUAL BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the Court summarizes the record as follows: In the summer of 2001, Plaintiff "was unwittingly lured into investing $10,000,000 in a scheme operated by" M.L., Mangere, and Holland through their companies Hartford Holding Corporation ("HHC") and Euro Capital Markets Ltd. ("Euro Capital"). The scheme was executed in the following manner: On July 19, 2001, Plaintiff wired $10,000,000 to HHC's account at U.S. Bank's Anaheim, CA, branch.[2] Plaintiff was assured that the funds would be used to purchase a treasury bill in the amount of $10,000,000, and Plaintiff included instructions to that effect with the wire transfer documents. Contrary to these instructions, M.L., who was president of HHC, did not secure a treasury bill. Instead, between July 19, 2009 and August 1, 2009, she disbursed the entire $10,000,000 to Mangere, Holland, and several other of her own designees. Among the recipients of the funds was M.L.'s daughter K.L, to whom $200,000 was wired from the HHC account on August 1, 2001.

---

[2] For reasons that are unclear, Plaintiff's original counsel never subpoenaed the bank records that might have proved that Plaintiff actually transferred the $10,000,000 to HHC's U.S. Bank account, and that M.L. subsequently authorized disbursement of the same funds to her own designees. As evidence of those purported facts, Plaintiff offers only wire transfer instructions indicating that the subject transfers were intended or expected to occur. Nonetheless, for purposes of the instant motion, the Court will assume that the transfers took place as Plaintiff claims.

Plaintiff contends that both K.L. and her law firm, Campbell Warburton, took part in the scheme to receive and dissipate the funds.  In support of this contention, Plaintiff points to internal documents reflecting the law firm's expectation of receiving large sums of money from M.L and Holland.  The documents refer to the creation of certain trust accounts that Plaintiff considers "suspicious," and that purportedly were established to hide the anticipated transfers. Plaintiff concedes that the anticipated transfers never occurred, but observes that Campbell Warburton did receive $60,000 by way of another of M.L. and Holland's entities.  The $60,000 appears to have come originally from the HHC account into which Plaintiff's money was deposited, and the transfer to the firm occurred shortly after Plaintiff purportedly wired the $10,000,000 investment.  In addition, there is evidence that K.L. received $200,000 from her mother shortly after the alleged conversion, and that the $200,000 came from the same HHC account into which Plaintiff wired its investment money.

In May 2003, Plaintiff, represented by attorney John Tulac ("Tulac"), filed an action in the Central District of California against HHC's then-attorney Kevin Connolly ("Connolly"). Plaintiff alleged that Connolly had helped to orchestrate the fraud on Plaintiff, and had received a substantial portion of the converted investment funds.  Plaintiff soon added HHC, Euro Capital, M.L., Holland, and Mangere as defendants, but did not name any John Doe defendants.  Plaintiff also did not obtain any bank records as evidence of where the investment funds actually had been transferred.  The action resulted in a default judgment against M.L. and Holland.  Plaintiff entered into a settlement with Connolly, and thereby obtained certain documents that are discussed below.

Around the same time in 2003, Tulac began investigating whether K.L. and Campbell Warburton also were recipients of Plaintiff's stolen investment funds.  Tulac wrote to K.L., inquiring as to whether she or the law firm ever had received "the amount of $29,000,000 from ABM Amro Bank or any other amount in trust."  Tulac also asked whether K.L. (and presumably the law firm) was "holding any money in trust on behalf of Hartford Holding Corporation," M.L., Holland, Mangere, or Euro Capital Marketing.  K.L. responded that "the firm has not received any money in trust in the amount of $10,000,000 or $29,000,000, nor has this firm ever received

3

any monies from Euro Capital Marketing and/or R.G. Mangere."

Tulac responded that K.L.'s letter was

> not completely responsive to my request in that it does not state whether the firm received *any other amount* or is presently holding any funds in trust for Hartford Holding Corporations and, if so, the amount being held. Also, you specifically deny receiving the amounts of $10,000,000 and $29,000,000, raising the strong inference that some other amount was received. Therefore, I must again ask whether the firm has received *any amount* in trust for or from Hartford Holding Corporation, Margaret Laughrin, and/or Clinton Holland since July 9, 2001, and what amount is currently on deposit in trust.

K.L. in turn responded that the firm

> once received $50,000, which was placed in a client trust and has been drawn against for legal services. The current trust balance is approximately $5,000. I reiterate my discomfort in your continued inquirers into my clients' financial affairs. No one is playing games here, however, personal financial inquiries are not something to take lightly. There is nothing else to report!

Tulac apparently asked no further questions.

Plaintiff subsequently sued Tulac for legal malpractice on the grounds, inter alia, that he failed to plead any Doe defendants in the original action and failed to obtain bank records allowing the purportedly stolen funds to be traced. As already noted, Plaintiff settled its action against Connolly. On February 21, 2006, as part of the settlement, Connolly disclosed certain wire transfer instructions indicating that shortly after Plaintiff's investment funds were wired to HHC's account, a $200,000 transfer was scheduled from that account to a private account held by K.L. The documents also revealed that approximately $60,000 had been wired to a Nevada holding company owned by M.L. and Holland, whence it was transferred almost immediately to Campbell Warburton's client trust account.[3]

Plaintiff obtained further evidence in January 2009 when Magistrate Judge Lloyd issued a discovery order in the instant action finding that the crime-fraud exception applied to certain otherwise privileged communications initiated by M.L., K.L., and other attorneys at Campbell Warburton. Judge Lloyd found a sufficient likelihood of criminal activity on the part of M.L. and

---

[3] As explained *infra* in note 6, the $10,000 discrepancy between the amount disclosed and the total amount apparently received by Campbell Warburton was the result of K.L.'s inadvertent failure to determine whether any trust funds were being held in the firm's general client trust account, as opposed to the firm's trust account for HHC.

Holland, and determined that the subject documents were sufficiently related to that fraud to warrant disclosure under the crime-fraud exception. However, after conducting an *in camera* review of all of Campbell Warburton's files, Judge Lloyd declined to find that the firm or K.L. knew of the fraud.

## II. LEGAL STANDARDS

**A.  Discovery continuance pursuant to Rule 56(f)**

"Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). In order to obtain relief under Rule 56(f), the movant "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Finance Center, Inc. v. Federal Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citing *Cal. On behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)). The movant therefore must do more than merely list "topics" of discovery in its Rule 56(f) request; it must show by affidavit that the discovery will produce facts that are "essential to oppose summary judgment." *Tatum v. San Francisco*, 441 F.3d 1090, 1100-01 (9th Cir. 2006) (finding no abuse of discretion to deny Rule 56(f) request where party failed to identify how discovery would have revealed facts precluding summary judgment).

**B.  Summary judgment pursuant to Rule 56(c)**

Summary judgment is appropriate when there are no genuine and disputed issues of material fact and the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must view the evidence in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of that party. *Torres v. City of Los Angeles*, 540 F.3d 1031, 1039-40 (9th Cir. 2008). The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other competent evidence. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A.    Statute of limitations**

Claims for the wrongful appropriation of property–including all three of Plaintiff's claims in the instant case–are subject to the three-year statute of limitations contained at Cal. Code Civ. Proc. § 338(c). While subsection (d) of the statute provides that in claims of fraud or mistake, "[t]he cause of action is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake," it is well-settled that a property owner's claim for conversion ordinarily accrues when the conversion occurs, even if the owner is ignorant of the wrong committed. *Naftzger v. Am. Numismatic Soc.*, 42 Cal. App. 4th 421, 429 (1996) (citing *Rose v. Dunk-Harbison Co.*, 7 Cal. App. 2d 502, 505 (1935)). As an exception to the general rule, the limitations may be tolled if the defendant fraudulently concealed the alleged wrong. *Id*. (citing *Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 561 (1956)). However, even if fraudulent concealment is shown, the limitations period may be tolled only for so long as the plaintiff is not on inquiry notice of its potential claim. *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App.4th 884, 890-91 (2002) ("The fraudulent concealment doctrine 'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'" (citation omitted)). The threshold for inquiry notice in California is quite low–that is, very little is required to put a plaintiff on inquiry notice and thus cause the limitations period to begin run. In essence, "[a] plaintiff is under a duty to reasonably investigate, and a *suspicion* of wrongdoing, coupled with a knowledge of the harm and its cause, commences the limitations period." *Id*. (emphasis added).

**1. Accrual of claims**

In the instant case, the alleged conversion occurred in 2001, around the time Plaintiff allegedly wired $10,000,000 to an account belonging to HHC at U.S. Bank's Anaheim, CA, office. The funds allegedly were dissipated shortly thereafter. As noted, a conversion ordinarily causes the statute of limitations to run irrespective of whether the owner of the converted property had knowledge of the wrongdoing. Because Plaintiff did not file the instant action until five-and-a-half years after the alleged conversion, it must demonstrate fraudulent concealment as

an initial prerequisite to avoiding the statute of limitations.[4]

**2. Fraudulent concealment**

Plaintiff would have little difficulty demonstrating fraudulent concealment if a fiduciary relationship had existed between Plaintiff and K.L., since "a fiduciary has a duty to make a full disclosure of facts which materially affect the rights of the parties, . . . [and] any act by [the fiduciary] amounting to a conversion of trust property is akin to a fraudulent concealment." *Strasberg v. Odyssey Group, Inc.*, 51 Cal. App. 4th 906, 917 (1996). Thus, assuming that $10,000,000 actually was wired to HHC's account at U.S. Bank, and that $200,000 of that amount was transferred to K.L. shortly thereafter, virtually any conduct by K.L. short of full disclosure would amount to fraudulent concealment. Here, however, there was no fiduciary relationship between Plaintiff and K.L. Rather, Plaintiff consigned its funds to M.L. and Holland through their holding company HHC. It had no relationship, fiduciary or otherwise, with K.L. or Campbell Warburton. Absent a fiduciary or other confidential relationship, "[m]ere nondisclosure is not concealment . . . ; there must be some *affirmative act* calculated to obscure the existence of a cause of action." *Hesse v. Venitieri*, 145 Cal. App. 2d 488, 451 (1956) (emphasis added); *see also Simons v. Edouarde*, 98 Cal. App. 2d 826, 829 (1950) ("Mere failure of a defendant to disclose to a plaintiff the existence of facts in the absence of a confidential relationship between the parties does not constitute fraudulent concealment of a cause of action."). With that standard in mind, the Court examines Plaintiff's theories of fraudulent concealment.

Plaintiff first suggests that Defendants' assertion of the attorney-client privilege to prevent discovery of pertinent information constituted fraudulent concealment. However, the privilege "belongs only to the client," *HLC Properties, Ltd. v. Superior Court*, 35 Cal.4th 54, 62 (2005), and Defendants had an absolute duty to assert it, *see Dickerson v. Superior Court*, 135

---

[4] Plaintiff appears to argue that the conversion was an ongoing event that continued for as long as Defendants fraudulently concealed their receipt of Plaintiff's funds. This argument finds no support in the case law and is contrary to bedrock principles of claim accrual articulated in the conversion cases decided by the California courts.

Cal. App.3d 93, 98 (1982) ("As long as there is a holder of the privilege in existence at the time disclosure is sought, the attorney has the duty to exercise the privilege unless the holder of the privilege instructs him not to do so."). Equally without merit is Plaintiff's suggestion that Judge Lloyd's application of the crime-fraud exception to certain privileged documents proves that Defendants were engaged in concealment. The crime-fraud exception does not require a finding of criminal or fraudulent activity on the part of the attorney; indeed, after reviewing all of K.L.'s and Campbell Warburton's files pertaining to the instant dispute, Judge Lloyd expressly declined to make any such finding.

Plaintiff next appears to argue that Defendants' lack of due diligence in determining the source and legality of the anticipated $29,000,000 wire transfer constitutes fraudulent concealment. This theory is defective for two reasons. As an initial matter, Plaintiff bases its theory on discussions regarding a *potential* transfer of $29,000,000 into a firm account. It is undisputed, however, that no such transfer ever occurred. More importantly, lack of diligence is not an "affirmative act" that could support a finding of fraudulent concealment.

Plaintiff's third "theory" is a relative of the second. It consists of a confusing narrative involving several purportedly suspicious meetings between M.L., Holland, and Campbell Warburton attorneys around the time the firm apparently expected to receive a large influx of cash from M.L. or her sham entities. Plaintiff first recounts that after an initial meeting with M.L. and Holland, Defendants "opened a special trust account into which large sums of money could be transferred from overseas." One of the attorneys noted at a related meeting that the firm should "park the money in [the] account," a statement which Plaintiff considers "suspicious." Defendants also purportedly "learned that at least one objective of the creation of the bank account under the Defendants [sic] control was to hide the identity of the recipient of the funds." This fact supposedly is established by the following comment by K.L., revealed in recent discovery: "hiding it? Why do you need it out of the Hartford Account?" Next, Plaintiff observes that another attorney involved in the matter was instructed to prepare a trust–which Plaintiff points out "can be used to hide the source and location of funds and assets"–and was presented with an extant trust for M.L. known as the Southern Belle Trust. Plaintiff notes that the attorney

8

Case No. C 07-935 JF (HRL)
ORDER DENYING MOTION FOR CONTINUANCE AND GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC3)

later described the Southern Belle Trust as "gibberish," suggesting that the trust was a sham. Plaintiff also makes reference to a proposed settlement agreement prepared by K.L., which apparently asked Plaintiff to agree that M.L., Holland, and HHC had received Plaintiff's money without knowing it was Plaintiff's. Finally, Plaintiff refers to handwritten notes made by K.L. following the 2006 settlement disclosures by Kevin Connolly, in which K.L. questions (1) how Plaintiff discovered that she received $200,000 on August 1, 2001, (2) what evidence there was that the Campbell Warburton received money, and (3) what prompted the May 16, 2003 letter from Tulac stating that he believed the firm had received money. Plaintiff fails to explain the significance of any of this "evidence," merely reciting the factual circumstances and inviting the Court to draw what inferences it will. Needless to say, Plaintiff's recitation of "suspicious" statements and identification of "suspicious" trust accounts does not amount to a coherent theory as to what actually occurred, and Plaintiff fails to identify a any "affirmative act" by K.L. or Campbell Warburton that might be characterized as concealment of the receipt of the funds in question.

Plaintiff does focus in a coherent fashion on K.L.'s response to several letters by Tulac concerning the firm's suspected possession of converted funds. As noted above, Tulac inquired as to whether the firm[5] had received funds in trust in the amount of $29,000,000, or in any other amount. K.L. responded that the firm had not received funds in that specific amount. Tulac repeated his inquiry with respect to the firm's receipt in trust of *any other amount*. K.L. responded that the firm had received a $50,000 deposit to its client trust account against which legal fees were to be drawn. Based on the current factual record, this statement appears to have been accurate.[6] K.L. was under no duty to disclose information to Plaintiff, and her purported

---

[5] While the first letter is slightly ambiguous as to whether the inquiry was directed at K.L. solely in her capacity as a member of Campbell Warburton, the second letter clarified that Plaintiff sought only information about funds received by the firm. In any event, both letters pertained exclusively to money being held "in trust."

[6] Defendants explain that K.L. "inadvertently failed to check for funds in the firm's general trust account, and consequently, only reported to Mr. Tulac the funds and balance of the specific Hartford Holding Corporation trust account." Of an initial transfer of $10,000,

failure to disclose, without solicitation, her receipt of $200,000–allegedly from the account into which Plaintiff wired its $10,000,000–does not constitute fraudulent concealment.  K.L. was asked only whether the *firm* had received funds *in trust*, not whether she had received any funds in her personal capacity.  Even assuming, as Plaintiff argues, that a previously absent duty of disclosure arose when K.L. chose to speak, *see Pashley v. Pacific Elec. Co.*, 25 Cal. 2d 226, 235 (1944), she answered the questions posed to her in a truthful manner.  Plaintiff concedes this implicitly by characterizing K.L.'s responses as "evasive" rather than false.  Similarly, viewed in light of the clear questions she was asked, it simply cannot be said that K.L. "suppress[ed] or conceal[ed] any facts within [her] knowledge which w[ould] [have] materially qualif[ied] those stated." *Id*.

In sum, the Court is unable to discern any facts in the record that individually or collectively would support a finding that Defendants affirmatively concealed the alleged wrongdoing from Plaintiff.

### 3. Delayed discovery and inquiry notice

Even if Defendants did fraudulently conceal their alleged wrongdoing from Plaintiff–and there is no evidence that they did–it is clear from the record that Plaintiff was on inquiry notice of its claims in 2003 at the latest, at which point the three-year limitations period began to run.  Thus, Plaintiff may not avail itself of the delayed discovery rules that operate in cases of fraudulent concealment.

> The courts interpret discovery . . . to mean not when the plaintiff became aware of the specific wrong alleged, but *when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing*.  The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry.  *A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery.*  Wrong and wrongdoing in this context are understood in their lay and not legal senses.

*Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d

---

approximately $7,800 remained in that account.  Plaintiffs do not contend that this omission was fraudulent in any way.  Rather, they complain only that "[t]he tone and structure of the letters minimize[d] any involvement by Defendants in the activities of M. Laughrin and Holland," and that K.L. failed to mention the $200,000 that she received in a personal capacity from her mother.

Case 5:07-cv-00935-JF   Document 116   Filed 05/29/09   Page 11 of 14

1103, 1110-11 (1988)).⁷ Particularly illuminating is the distinction drawn by the California courts between the accrual of claims for theft and of those for conversion. In *Naftzger v. American Numismatic Society*, 42 Cal. App. 4th 421, 431-32 (1996), the court explained that "[i]n the theft situation . . . , the owner cannot sue the thief or the innocent purchaser prior to discovering their identities." By contrast, "[i]n any conversion situation, the owner, upon discovering the injury, can immediately sue the person who was originally entrusted with possession. Because the identity of that person is known, the owner can file a lawsuit and utilize the civil discovery tools to ascertain the whereabouts of the property and the identities of any remaining Doe defendants." *Id*.

In the instant case, Plaintiff clearly knew that its money had been converted. Plaintiff claims that it was not specifically aware of any wrongdoing by K.L. or her law firm until February 21, 2006, when Plaintiff received documents from former HHC counsel Connolly indicating that K.L. had received $200,000 from the same account into which Plaintiff's money supposedly was wired. In 2003, however, Plaintiff's then-attorney John Tulac, purporting to investigate the loss of Plaintiff's $10,000,000, wrote the above-discussed letters to K.L., stating in the first of the letters that "[y]our firm's trust account has been identified as a possible location of funds claimed by my client." Tulac's suspicion that third-parties had come into possession of Plaintiff's money is unsurprising: in the earlier action against M.L., Holland, and related entities, Plaintiff alleged that M.L. had admitted in a signed writing that she had used Plaintiff's $10,000,000 investment for her own benefit *and the benefit of others* by transferring various amounts out of the HHC account where the money had been deposited. Under these

---

⁷ Plaintiff rests its contrary argument on a single case from 1974 which states that where a defendant fraudulently conceals the alleged wrong, "a plaintiff may [not] be held chargeable with want of diligence in failing sooner to discover the truth, [unless] he [was] . . . under a duty to make the discovery." *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321-22 (1974). No subsequent cases have followed this rule, and the sole case cited in support was one in which the Plaintiff and Defendant were in a confidential relationship, meaning that "facts which would ordinarily require investigation [might] not excite suspicion, [and so] . . . the same degree of diligence [was] not required." *Bowman v. McPheeters*, 77 Cal. App. 2d 795, 801 (1947). There was no such relationship here. In any event, *Baker* did recognize that notice may be imputed where, under the circumstances, a prudent person would be "put on inquiry." *Id*. at 321-22.

11
Case No. C 07-935 JF (HRL)
ORDER DENYING MOTION FOR CONTINUANCE AND GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC3)

circumstances, it is immaterial whether Plaintiff knew all of the facts required to state a claim against Defendants. It cannot reasonably be disputed that Plaintiff knew that "an injury was caused by wrongdoing." Upon discovering that its funds had been converted, Plaintiff could and did "immediately sue the person who was originally entrusted with possession." *Naftzger*, 42 Cal. App. 4th 421, 431-32 (1996). Thereafter, it was incumbent upon Plaintiff to "utilize the civil discovery tools to ascertain the whereabouts of the property and the identities of any remaining Doe defendants." *Id*. Accordingly, the limitations period began to run in 2003 at the latest, and each of Plaintiff's claims is time-barred.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that there is no genuine dispute as to any material fact that would allow Plaintiff to avoid the statute of limitations that applies to each of its claims. Accordingly, Defendants' motion for summary judgment will be granted. The Court reaches this conclusion after considering all of Plaintiff's proffered evidence, notwithstanding Defendants' voluminous objections thereto. Because Plaintiff's seeks a Rule 56(f) continuance for the sole purpose of providing a foundation for documents whose significance the Court already has considered, a continuance is unnecessary, and Plaintiff's Rule 56(f) motion will be denied.[8]

**IT IS SO ORDERED**

DATED: 5/29/09

_____
JEREMY FOGEL
United States District Judge

---

[8] At oral argument, counsel for Plaintiff suggested that further discovery–specifically the deposition of Kevin Connolly–might reveal additional evidence of fraudulent concealment. Even if it were proper to grant a Rule 56(f) motion on the basis of such oral speculation–which decidedly it is not–it should be clear from the Court's discussion that the truly insurmountable obstacle facing Plaintiff is the inquiry notice standard under California law.

12

Case No. C 07-935 JF (HRL)
ORDER DENYING MOTION FOR CONTINUANCE AND GRANTING MOTION FOR SUMMARY JUDGMENT
(JFLC3)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 | This order has been served upon the following persons:

Jerome H Mooney  jerrym@mooneylaw.com

Jon Mark Thacker  jthacker@ropers.com, bsafadi@ropers.com

Richard Martin Williams  rwilliams@ropers.com, dbautista@ropers.com, jthacker@ropers.com, kngyuen@ropers.com